# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

KENNETH M. HARDY, JR.,

    Petitioner,

v.

MARIROSA LAMAS, et al.,

    Respondents.

CIVIL ACTION NO. 1:13-CV-02539

(KANE, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

    The Court has received and filed a petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, originally signed and dated by the Petitioner, Kenneth M. Hardy Jr., on September 12, 2013. (Doc. 4). The petition was originally submitted in error to the United States District Court for the Western District of Pennsylvania, which received and docketed the petition on September 16, 2013. (Doc. 1). The case was subsequently transferred to this Court on October 9, 2013. (Doc. 6). Although he initially proceeded *pro se*, Hardy eventually was appointed counsel (Doc. 35), and submitted an amended petition for a writ of habeas corpus through counsel on February 2, 2016 (Doc. 49). At all times relevant to this petition, Hardy has been incarcerated at SCI- Benner Township, located in Centre County, Pennsylvania.

### I.  STATEMENT OF THE CASE AND PROCEDURAL HISTORY

    In his petition, Hardy challenges his March of 2005 conviction and sentence in the Court of Common Pleas of Mifflin County for criminal homicide and endangering the welfare of a child. (Doc. 49, at 4); *Commonwealth v. Hardy*, Docket No. CP-44-CR-0000453-2003 (Mifflin

County C.C.P.).[1] He was sentenced by Mifflin County Court of Common Pleas Judge Timothy S. Searer to a term of 18-40 years' imprisonment. (Doc. 49, at 5); *Commonwealth v. Hardy*, Docket No. CP-44-CR-0000453-2003 (Mifflin County C.C.P.). Hardy was represented by attorney Stuart Cilo prior to trial and by attorney Mark Remy during trial. *Commonwealth v. Hardy*, Docket No. CP-44-CR-0000453-2003 (Mifflin County C.C.P.). After post-sentence motions, Hardy appealed his conviction to the Superior Court of Pennsylvania on April 4, 2006, which affirmed the judgment of sentence on February 23, 2007. (Doc. 49, at 5); *see also Commonwealth v. Hardy*, 918 A.2d 766 (Pa. Super. Ct. 2007); *Commonwealth v. Hardy*, Docket No. 1538 MDA 2005 (Pa. Super. Ct.). Hardy then petitioned the Supreme Court of Pennsylvania for allowance of appeal on March 26, 2007, which was denied on January 2, 2008. (Doc. 49, at 5); *see also Commonwealth v. Hardy*, 940 A.2d 362 (Pa. 2008) (table); *Commonwealth v. Hardy*, Docket No. 261 MAL 2007 (Pa.). Attorney Ralph Germak represented Hardy throughout direct appeal. *Commonwealth v. Hardy*, Docket No. 1538 MDA 2005 (Pa. Super. Ct.).

Upon the conclusion of direct review, Hardy filed a petition for collateral relief under the Pennsylvania Post-Conviction Relief Act ("PCRA") in the Mifflin County Court of Common Pleas (the "PCRA Court") on January 11, 2008, alleging ineffective assistance of counsel.[2]

---

[1] In addition to the petition, a federal habeas court may take judicial notice of state court records. *Minney v. Winstead*, No. 2:12-CV-1732, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing this petition, the Court has taken judicial notice of the publicly-available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Mifflin County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania.

[2] Judge Searer again presided over Hardy's PCRA proceedings at first, but was eventually replaced by Judge David W. Barron. *Commonwealth v. Hardy*, Docket No. CP-44-CR-0000453-2003 (Mifflin County C.C.P.)

(Doc. 49, at 5); *Commonwealth v. Hardy*, Docket No. CP-44-CR-0000453-2003 (Mifflin County C.C.P.). Hardy's PCRA petition lingered in the PCRA Court for seven years due to a variety of delays. Specifically, Hardy was represented by three successive court-appointed attorneys while his petition was pending in the PCRA Court, and as a result, the PCRA Court granted numerous extensions for Hardy's various counsel to read the voluminous case file and file amended petitions. (Doc. 49, at 5-6); *Commonwealth v. Hardy*, Docket No. CP-44-CR-0000453-2003 (Mifflin County C.C.P.). The lone brief period of activity during this period consisted of a motion filed by Hardy's first PCRA attorney on December 17, 2008 seeking funds to obtain a medical expert, which was denied by the PCRA Court on January 21, 2009. (Doc. 4-1, at 2); *Commonwealth v. Hardy*, Docket No. CP-44-CR-0000453-2003 (Mifflin County C.C.P.). Finally, on February 26, 2015, Hardy's PCRA petition was denied in an opinion and order entered by Judge Barron. (Doc. 36-1); *Commonwealth v. Hardy*, Docket No. CP-44-CR-0000453-2003 (Mifflin County C.C.P.). Hardy appealed the denial of his PCRA petition to the Superior Court on April 22, 2015, which affirmed the denial of his PCRA petition on December 1, 2015. (Doc. 49-1, at 1-17); *Commonwealth v. Hardy*, Docket No. 703 MDA 2015 (Pa. Super. Ct.). Hardy chose not to seek allowance of appeal of his PCRA petition to the Supreme Court of Pennsylvania. (Doc. 48, ¶ 14).

Hardy signed and dated his initial *pro se* petition for a writ of habeas corpus through counsel pursuant to 28 U.S.C. § 2254 on September 12, 2013, while his PCRA petition was still pending in the PCRA Court. (Doc. 4). On October 28, 2013, upon reviewing the petition, the Court directed Respondents to file an answer, motion, or other response pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254. (Doc. 7). Respondents filed their response to the petition on December 16, 2013,

asserting that the federal habeas petition should be denied because Hardy's PCRA petition was still pending in state court and thus he had not exhausted his state court remedies. (Doc. 12). Hardy replied that the exhaustion requirement should be excused because the inordinate delay in the adjudication of his PCRA petition effectively rendered state court remedies unavailable. (Doc. 14).[3] After further proceedings, this Court appointed counsel to represent Hardy in an Order dated February 3, 2015, and directed counsel to file an amended habeas petition on Hardy's behalf. (Doc. 35). Shortly thereafter, the PCRA Court denied Hardy's PCRA petition in an opinion and order dated February 26, 2015. (Doc. 36-1); *Commonwealth v. Hardy*, Docket No. CP-44-CR-0000453-2003 (Mifflin County C.C.P.). Hardy, through counsel, then requested a stay and abeyance so he could exhaust state remedies by appealing the denial of his PCRA petition to the Pennsylvania Superior Court. (Doc. 40). On May 8, 2015, the Court granted Hardy's motion to stay these habeas proceedings. (Doc. 41).

On February 2, 2016, Hardy informed this Court that his state court exhaustion efforts had concluded because the Superior Court denied Hardy's PCRA appeal on December 1, 2015, and he had chosen not to seek allowance of appeal to the Pennsylvania Supreme Court. (Doc. 48). Along with his status report, Hardy filed an amended, counseled habeas petition asserting a single claim of ineffective assistance of trial counsel. (Doc. 49). The Court then lifted the stay in these habeas proceedings and directed Respondents to file an answer, motion, or other response to the amended habeas petition. (Doc. 50). Respondents filed their response to the amended petition on April 18, 2016, in which they argue that Hardy's claim is procedurally defaulted. (Doc. 60). On June 3, 2016, Hardy filed a reply arguing that the claim was not procedurally

---

[3] The Court first received and filed Hardy's handwritten reply brief on December 30, 2014. (Doc. 13). A few weeks later, the Court received a substantively identical typewritten reply. (Doc. 14).

defaulted, and in the alternative, that any procedural default should be excused because he can demonstrate cause and prejudice. (Doc. 64). Having been fully briefed, this petition is now ripe for disposition.

Hardy presents the following sole ground for relief in his amended federal habeas petition:

(1) Trial counsel was ineffective for failing to properly investigate the case, locate an expert and present expert testimony to challenge the prosecution's expert witnesses.

(Doc. 49, at 9).

## II. DISCUSSION

### A. HARDY'S LONE GROUND FOR RELIEF IS PROPERLY BEFORE THIS COURT

Respondents argue that Hardy's lone ground for relief is not properly before this Court because he "failed to present the factual underpinnings" of his ineffective assistance of counsel claim and gave "no indication that he was presenting a federal claim" when appealing the denial of his PCRA petition to the Superior Court. (Doc. 60, at 19). Generally, a federal district court may not grant a habeas petition unless the petitioner has first exhausted all available state court remedies. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "The exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004); *see also O'Sullivan*, 526 U.S. at 844–55 ("[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . .").

"To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *Lambert v. Blackwell*, 134 F.3d

5

506, 513 (3d Cir. 1997), *as amended* (Jan. 16, 1998) ("[A] federal habeas claim must have been 'fairly presented' to the state courts, i.e., it must be the substantial equivalent of that presented to the state courts."). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made," *Anderson v. Harless,* 459 U.S. 4, 6 (1982), as the petitioner "must have communicated to the state courts in some way that [the petitioner was] asserting a claim predicated on federal law." *McCandless,* 172 F.3d at 261. The United States Court of Appeals for the Third Circuit has recognized that a petitioner may "fairly present" a federal claim to state courts through "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Evans v. Court of Common Pleas, Delaware Ctny., Pa.*, 959 F. 2d 1227, 1232 (3d Cir. 1992) (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)).

Respondents first contend that Hardy only raised his ineffective assistance claim within the context of state law rather than as a federal constitutional claim, and note that Hardy's appellate brief before the Superior Court failed to cite to any federal statutes or caselaw. (Doc. 60, at 19 (citing Doc. 59-4, at 4)). In reply, counsel for Hardy counters that the Superior Court's own opinion affirming the denial of Hardy's PCRA petition makes clear that it understood that he was presenting an ineffective assistance claim predicated on federal law. (Doc. 64, at 5 (citing Doc. 49-1, at 8-9)). Although Respondents correctly point out that Hardy failed to cite federal statutes or caselaw in his brief to the Superior Court on PCRA appeal, reliance on federal cases is just one of several ways that a petitioner may "fairly present" a federal claim to

6

state courts. *See Evans*, 959 F. 2d at 1232. Indeed, the Pennsylvania Supreme Court has previously held that the standard for establishing ineffective assistance under federal and Pennsylvania law "constitute the same rule." *Commonwealth v. Pierce*, 527 A.2d 973, 976 (Pa. 1987). Thus, "it is clear that a state court addressing an [ineffective assistance] claim would understand the claim to arise under both state constitutional, as well as federal, law." *Veal v. Myers*, 326 F. Supp. 2d 612, 625 (E.D. Pa. 2004). Because the particular terms of Hardy's ineffective assistance claim "call to mind a specific right protected by the Constitution," namely the Sixth Amendment right to effective counsel at trial, this Court finds that Hardy adequately communicated that he was presenting a claim predicated on federal law. *Evans*, 959 F. 2d at 1232; (Doc. 49-1, at 8 ("Appellant explicitly references ineffective assistance from his trial counsel . . . .")).

Respondents alternatively contend that Hardy failed to fairly present his ineffective assistance claim because his brief to the Superior Court on PCRA appeal did not share the same "factual underpinnings of the claim that is now contained in his habeas petition; namely, that trial counsel should have located an expert that could have testified that a child can die from a 'short fall.'" (Doc. 60, at 19). Counsel for Hardy replies that although inartfully drafted, Hardy's brief sufficiently made clear that his claim was based on trial counsel's failure "to 'investigate, obtain and present [a] forensic medical expert to aid [in the] development of [a] defense to rebut [the] Commonwealth's theory in prosecuting their case.'" (Doc. 64, at 6 (quoting Doc. 59-4, at 14-15 (alterations in original))). The Court finds that counsel for Hardy successfully refutes Respondents' contention that Hardy failed to present the factual basis for his lone ground for relief by pointing to specific factual averments in Hardy's PCRA appellate brief to the Superior Court that allege he was harmed by trial counsel's failure to present expert

medical testimony at trial. Moreover, the Court's obligation to liberally construe the filings of incarcerated *pro se* litigants also weighs in favor of finding that Hardy adequately communicated the factual basis for his claim. See *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-46 (3d Cir. 2013); *see also Xavier v. Harlow*, No. 3:12-CV-01603, 2015 WL 9685500, at *2 n.5 (M.D. Pa. May 22, 2015) (rejecting respondent's invitation to narrowly construe prisoner's *pro se* habeas petition as asserting a claim for direct constitutional error and instead finding that petitioner fairly presented a claim for ineffective assistance of trial counsel). Because Hardy fairly presented the factual and legal substance of his ineffective assistance of trial counsel claim, the Court concludes that Hardy properly exhausted state court remedies.

B. INEFFECTIVE ASSISTANCE CLAIM ON THE MERITS

Having determined that Hardy's ineffective assistance of trial counsel claim was properly exhausted, the Court must now address this claim on its merits. Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *Dunn v. Colleran,* 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman,* 525 U.S. 141, 146 (1998)). Accordingly, a federal court may not grant a state prisoner habeas relief with respect to any claim that was adjudicated on the merits in state court, unless the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
> 28 U.S.C. § 2254(d).

The Supreme Court defines "clearly established federal law" as "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412 (2000).

In his lone ground for relief, Hardy argues that his Sixth Amendment right to effective counsel was violated by trial counsel Mark Remy's failure to conduct a proper investigation, locate a medical expert, and present expert medical testimony to challenge the prosecution's expert witnesses. (Doc. 49, at 9). The standard for ineffective assistance of counsel claims was established in the seminal Supreme Court case of *Strickland v. Washington*. 466 U.S. 668 (1984). In *Strickland*, the Supreme Court articulated a two-pronged test for evaluating whether counsel's performance was constitutionally deficient. Specifically, "[u]nder *Strickland*, courts are precluded from finding that counsel was ineffective unless they find both that counsel's performance fell below an objectively unreasonable standard, and that the defendant was prejudiced by that performance." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002). This review of counsel's performance must be "highly deferential," as the petitioner has the burden of overcoming the strong presumption that his counsel's conduct fell "within the wide range of reasonable professional assistance" and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90. Even if a petitioner demonstrates that his attorney's performance fell below prevailing professional norms, habeas relief will only be available if he further demonstrates that this deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 691-92. To demonstrate that he was prejudiced by counsel's ineffective performance, a petitioner "must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts properly deny an ineffective assistance of counsel claim upon determining that a petitioner fails to make a sufficient showing under either the performance component or the prejudice component of the *Strickland* two-part test. *Strickland,* 466 U.S. at 697.

Although Pennsylvania state courts evaluate ineffective assistance claims by applying a test that differs slightly from *Strickland*, the Third Circuit has made clear that Pennsylvania's test is not contrary to *Strickland*. *Jacobs v. Horn*, 395 F.3d 92, 106 n.9 (3d Cir. 2005) (citing *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000)). Accordingly, under the deferential standard mandated by 28 U.S.C. § 2254(d)(1), the Court may only grant Hardy habeas relief on his ineffective assistance of counsel claim upon finding that the PCRA Court and Superior Court's decisions involved an unreasonable application of *Strickland*. Furthermore, because Hardy's ineffective assistance of counsel claim was adjudicated on the merits in state court, this Court's "review is 'doubly deferential:' the state court was obligated to conduct deferential review of counsel's performance and [this Court] must give deference to the state court rulings under AEDPA." *Showers v. Beard*, 635 F.3d 625, 629 (3d Cir. 2011).

Counsel for Hardy argues that Attorney Remy rendered ineffective assistance in failing to seek out and retain an expert in forensic pathology or shaken baby syndrome that would have contradicted the testimony offered by the Commonwealth's expert witnesses. (Doc. 49, at 10, 12, 13). In addition, counsel for Hardy claims that Attorney Remy failed to investigate a possible alternative explanation for the baby's brain injury, namely, that the baby was allegedly hit in the head by a plastic football thrown by his three-year-old half-brother prior to the baby ever being in Hardy's custody. (Doc. 49, at 11).

In denying Hardy's PCRA petition, Judge Barron found that the allegations against Attorney Remy "are speculative and without merit." (Doc. 36-1, at 5). Specifically, Judge Barron concluded that Attorney Remy "review[ed] and evaluate[d] the Commonwealth's evidence and conducted a thorough investigation in preparation of trial." (Doc. 36-1, at 5). Furthermore, in regard to Attorney Remy's failure to present expert medical testimony on

Hardy's behalf at trial, Judge Barron noted that Attorney Remy contacted several potential experts and ultimately made a reasonable strategic decision not to call Dr. Kristie L. Kaufman, M.D., a local pediatrician, because Dr. Kaufman's testimony would have only strengthened the Commonwealth's case given that she opined that the baby's brain injuries were likely caused by abusive force such as shaking, whereas an accidental injury was possible but less likely. (Doc. 36-1, at 5-6).

The Superior Court affirmed the reasoning of Judge Barron on PCRA appeal. (Doc. 49-1). In regard to the effectiveness of Attorney Remy, the Superior Court found that Hardy's undeveloped, boilerplate claim based on Attorney Remy's alleged failure to investigate, obtain, and present medical expert testimony was insufficient to establish ineffective assistance. (Doc. 49-1, at 10-11). The Superior Court then went on to discuss Hardy's alternative theory for the baby's death involving the plastic football. (Doc. 49-1, at 12-13). In rejecting this theory, the Superior Court noted that Hardy's own potential expert witness, Dr. Kaufman, opined that the baby's brain injury was either caused by "abusive force" or "a massive accidental event," which presumably would require far more than being struck by a plastic football thrown by a three-year-old. (Doc. 49-1, at 12 & n.3). The Superior Court further reiterated, in the context of Hardy's ineffective assistance of PCRA counsel claims, that Hardy's counsel rendered effective assistance despite being unable to find an expert witness who could corroborate Hardy's theory of the case.[4] (Doc. 49-1, at 13). Specifically, the Superior Court concurred with Judge Barron that PCRA counsel was not ineffective for failing to secure Kirk L. Thibault, Ph.D., as an

---

[4] Effective assistance of post-conviction counsel is recognized as a right under Pennsylvania, but not federal, law. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Commonwealth v. Albrecht*, 720 A.2d 693, 700 (Pa. 1998). Hardy's claims of ineffective assistance of PCRA counsel thus are not presently before this Court because "federal habeas corpus relief does not lie for errors of state law . . . ." *Lewis v. Jeffers*, 497 U.S. 764, 765 (1990).

expert witness because Thibault's potential testimony paled in comparison to the overwhelming evidence presented by the Commonwealth and thus the absence of Thibault's testimony was not prejudicial to Hardy's case. (Doc. 49-1, at 15-16 (citing Doc. 36-1, at 7)). Furthermore, even if Thibault's testimony would have been significant enough to undermine the Commonwealth's case, the Superior Court concluded that Thibault "was unwilling to testify on [Hardy's] behalf," given the numerous letters, telephone calls, and messages left for Thibault by Hardy's PCRA counsel that never received a response. (Doc. 49-1, at 16-17).

Hardy fails to demonstrate how Attorney Remy's investigation and efforts to present expert medical testimony fell below an objectively unreasonable standard. As noted in *Strickland*, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. Here, the facts of the case during the time period in question reveal that Attorney Remy's actions were reasonable given the options available to him. First, the PCRA Court's undisputed findings that Attorney Remy "review[ed] and evaluate[d] the Commonwealth's evidence and conducted a thorough investigation in preparation of trial" and also "contacted several potential experts, including Dr. Kristie L. Kaufman, M.D. during the pretrial investigation" belies Hardy's assertion that Attorney Remy failed to conduct a proper investigation. (Doc. 36-1, at 5). Furthermore, this Court agrees with the PCRA Court's analysis that Attorney Remy's decision not to call Dr. Kaufman as an expert witness was sound trial strategy given that Dr. Kaufman's testimony was likely to undermine Hardy's case because she opined that the most likely cause of the baby's injury and subsequent death was non-accidental trauma. (Doc. 36-1, at 5); *see also United States v. Lively*, 817 F. Supp. 453, 462 (D. Del. 1993) ("As a general rule, decisions relating to a reasoned choice of trial

strategy and tactics are not cognizable in a federal habeas corpus proceeding in the context of an ineffective assistance of counsel claim.") (quotation omitted), *aff'd*, 14 F.3d 50 (table).

Dr. Kaufman notwithstanding, Hardy maintains that Attorney Remy "should have sought out a forensic pathologist or an expert in shaken baby syndrome, and such experts abound, to review Mr. Hardy's case." (Doc. 49, at 10). Nonetheless, Hardy remains unable to identify a single medical expert that would have been willing to testify at trial that the baby's injuries were most likely accidental, despite over a decade elapsing since his conviction and sentence. Indeed, Hardy relies on the fact that he identified Thibault as a potential expert, but the PCRA Court and Superior Court both determined that Thibault was unwilling to testify on Hardy's behalf. (Doc. 36-1, at 7; Doc. 49, at 16-17). Moreover, Hardy only appears to have identified Thibault as a potential expert during post-conviction proceedings; Hardy does not indicate that Thibault was available as an expert during the trial and while Attorney Remy was conducting his pre-trial investigation.[5] *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

---

[5] In a non-precedential opinion affirming the denial of habeas relief to a petitioner convicted for the death of his son due to shaken baby syndrome, the Third Circuit also noted that pathologists such as Thibault "lack[ ] the expertise to give an opinion on behalf of the entire medical community" and as such their opinions on shaken baby syndrome "are not universally accepted by the scientific community." *Wright v. Superintendent Somerset SCI*, 601 F. App'x 115, 121 (3d Cir. 2015) (not precedential), *cert. denied sub nom. Wright v. Wingard*, 136 S. Ct. 241 (2015). Thus, even if Attorney Remy had been objectively unreasonable in failing to present expert testimony from a forensic pathologist, it is far from clear that his failure to elicit such testimony was prejudicial to Hardy's case in light of the overwhelming evidence presented by the Commonwealth, including its two expert witnesses, weighed against a pathologist's testimony. (Doc. 49, at 15-16).

Counsel for Hardy also points out that at the time of Hardy's trial, some individuals in the medical community had begun to question the validity and frequency of the shaken baby syndrome diagnosis. (Doc. 49, at 11-12; Doc. 49-1, at 19-22). However, the publication of a medical opinion potentially helpful to Hardy's defense does not entail that Attorney Remy acted unreasonably because he failed to retain an expert to espouse that specific opinion, particularly as counsel for Hardy does not identify any witnesses who Attorney Remy could have called during trial to present this specific testimony. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) ("[Petitioner] cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention."); *see also Commonwealth v. Williams*, 640 A.2d 1251, 1265 (Pa. 1994) ("When a defendant claims that some sort of expert testimony should have been introduced at trial, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence."). The introduction of expert testimony is rarely the only reasonable strategy for defense counsel, and can have the negative effects of distracting the jury from evaluating the truthfulness of the fact witnesses presented and transforming the case into a battle of the experts. *See Harrington v. Richter*, 562 U.S. 86, 106-109 (2011). Furthermore, "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 562 U.S. at 111. Here, the PCRA Court and Superior Court determined that Attorney Remy contacted several potential expert witnesses, including Dr. Kaufman, but ultimately concluded that none of the available expert witnesses would be helpful to Hardy's defense at trial. *See Flick v. Warren*, 465 F. App'x

461, 465 (6th Cir. 2012) (affirming denial of habeas relief where petitioner argued that trial counsel was ineffective for failing to call an expert to challenge the science behind shaken baby syndrome, noting that "[e]ffective assistance does not require counsel to continue contacting experts until he found one . . . willing to testify against the prosecution's theory of the case"). In light of these findings and the record before the Court, Attorney Remy's pre-trial investigation and decision not to call a medical expert was an "exercise of reasonable professional judgment."[6] *Strickland*, 466 U.S. at 689-90.

    This Court also briefly addresses the claim that Attorney Remy failed to investigate the plastic football incident, which now serves as Hardy's alternative theory for the baby's brain injury and death. (Doc. 49, at 11). Attorney Remy's decision not to pursue this alternative theory fell "within the wide range of reasonable professional assistance" under *Strickland*. 466 U.S. at 669. "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 562 U.S. at 109 (quotation omitted). Here, that presumption is supported by the fact that the football incident is inconsistent with Hardy's theory of defense asserted at trial that the baby was injured by falling off the couch. (Doc. 59-3, at 65-66); *see also United States v. Jones*, 785 F. Supp. 1181, 1183 (E.D. Pa. 1992) ("Defense counsel has no obligation to call, or even to interview, a witness whose testimony . . . would have been inconsistent with the theory of defense."), *aff'd*, 980 F.2d 725 (3d Cir. 1992) (table). Moreover, even if Attorney Remy's decision not to pursue the plastic football theory had been objectively unreasonable, Hardy cannot establish that the failure to

---

[6] At least one federal court of appeals has also noted that scientists questioning the validity of shaken baby syndrome "represented the minority view" as of the late 1990s, and that "the questioning was not so pervasive that it was unreasonable for trial counsel to have been unaware of the controversy." *Flick*, 465 F. App'x at 465.

raise this argument was prejudicial. There is no reason to believe that the jury would have credited the plastic football explanation for the baby's brain injury after rejecting Hardy's explanation that the baby fell from the couch, particularly given that the testimony from the Commonwealth's two expert witnesses that the baby's death was caused by non-accidental trauma is equally damning of both theories.

This Court concludes that the PCRA court and the Superior Court reasonably applied the *Strickland* standard in finding that Attorney Remy's actions in investigating the case and opting against presenting an expert witness at trial did not constitute ineffective assistance of counsel. The Court therefore recommends that Hardy's sole ground for relief be denied, as the PCRA Court and Superior Court decisions denying Hardy's request for post-conviction relief were neither contrary to, nor an unreasonable application of, federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

### III.   RECOMMENDATION

Based on the foregoing, it is recommended that Hardy's amended petition (Doc. 49) be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court further recommends against the issuance of a certificate of appealability, as Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated: November 7, 2016                             *s/ Karoline Mehalchick*
                                                    **KAROLINE MEHALCHICK**
                                                    **United States Magistrate Judge**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH M. HARDY, JR.,<br><br>    Petitioner,<br><br>  v.<br><br>MARIROSA LAMAS, et al.,<br><br>    Respondents. | CIVIL ACTION NO. 1:13-CV-02539<br><br>(KANE, J.)<br>(MEHALCHICK, M.J.) |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **November 7, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: November 7, 2016                                                        *s/ Karoline Mehalchick*
                                                                                           **KAROLINE MEHALCHICK**
                                                                                           **United States Magistrate Judge**